UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

FERMIN ALDABE

                                    Plaintiff

                    v                              Civil Action No:   PJM-21-803

JONATHAN COHEN
600 Pennsylvania Avenue, NW
Washington, DC 20580,

JOSEPH J. SIMONS,
600 Pennsylvania Avenue, NW
Washington, DC 20580,

REBECCA KELLY SLAUGHTER,
600 Pennsylvania Avenue, NW
Washington, DC 20580,

NOAH JOSHUA PHILLIPS,
600 Pennsylvania Avenue, NW
Washington, DC 20580,

ROHIT CHOPRA,
600 Pennsylvania Avenue, NW
Washington, DC 20580,

CHRISTINE S. WILSON,
600 Pennsylvania Avenue, NW
Washington, DC 20580,

BENJAMIN J. THEISMAN,
600 Pennsylvania Avenue, NW
Washington, DC 20580,

AMANDA B. KOSTNER,
600 Pennsylvania Avenue, NW
Washington, DC 20580,

KHOURYANNA DiPRIMA,
600 Pennsylvania Avenue, NW
Washington, DC 20580,

1

**CREIGHTON MAGID,**
**1401 New York Avenue NW**
**Suite 900**
**Washington DC, 20005**

**THE GOVERNMENT OF BELIZE,**
**6120 Racoon Street,**
**Belmopan, Belize**

**THE CENTRAL BANK OF BELIZE,**
**Central Bank of Belize**
**Gabourel Lane**
**Belize City, Belize,**

**JOY GRANT,**
**Central Bank of Belize**
**Gabourel Lane**
**Belize City, Belize,**

**ATLANTIC INTERNATIONAL BANK LTD,**
**1st Floor, Ibis Building**
**828 Coney Drive**
**Belize City, Belize,**

**JULIAN MURILLO**
**1st Floor, Ibis Building**
**828 Coney Drive**
**Belize City, Belize**

                                    **Defendants**
———————————————————————————/


## PLAINTIFF

1. Plaintiff is an individual, who having had not act or part or means to prevent or influence

   the acts of Atlantic International Bank Limited (**AI Bank**) in the matter described in the

claim by the Federal Trade Commission (**FTC**) against AI Bank before this court
(1:18-cv-03309-PJM), suffered the damages herein pleaded.

### DEFENDANTS

2. R. Slaughter, N. Phillips, R. Chopra, C. Wilson, and J. Simmons are or were the FTC
   commissioners who approved the filing of the FTC claim against AI Bank and approved
   the settlement of the FTC claim against AI Bank.

3. J Cohen, B. Theisman, A. Kostner, and K. DiPrima are sworn officers of the court and the
   legal team responsible for bringing and moving forward the FTC claim against AI Bank.

4. R. Slaughter, N. Phillips, R. Chopra, C. Wilson, and J. Simmons, J Cohen, B. Theisman,
   A. Kostner, and K. DiPrima are collectively referred to in the remainder of this claim as
   **The FTC Defendants**.

5. Atlantic International Bank Ltd (**AI Bank**) was a bank until May 2019 when it was taken
   over by the Central Bank of Belize and placed into liquidation.  AI Bank offered banking
   services to approximately 1000 US clients who used its banking services, including
   Palma Efuus Ltd who was plaintiff's broker/agent.

6. The Central Bank of Belize is the monetary authority of Belize charged with the issuance
   of the banking license of AI Bank, the supervision of AI Bank, its placement into
   liquidation and its control after it was put into liquidation under Domestic Banks and
   Financial Institutions Act (2012,Belize) section 106.

7. J Grant is the governor of the Central Bank of Belize and was the person responsible for
   all the decisions taken with regards to the FTC claim against AI Bank, its settlement and

the liquidation of AI Bank, including the delay and eventual approval of the first
disbursement to depositors.

8. The Government of Belize is a government of a foreign state known as Belize and is the
ultimate responsible and owner of the Central Bank of Belize.

9. J. Murillo is the liquidator of AI Bank since it was placed in liquidation. He was
appointed liquidator of AI Bank by the Central bank of Belize at the discretion of J Grant.

10. AI Bank, J Grant J. Murillo, The Government of Belize and The Central Bank of Belize
are collectively referred to in the remainder of this claim as **The Belize Defendants**.

11. C Magid was the legal counsel appointed to represent AI Bank in the FTC claim against
AI Bank.

## JURISDICTION

12. The court has jurisdiction over J Cohen, B. Theisman, A. Kostner, and K. DiPrima under
Maryland's long-arm statute § 6-103 (b)(1) because they voluntarily, deliberately and
systematically engaged in the significant activities of filing a claim against AI Bank
before the Maryland US District Court (Baltimore), filing motions to freeze AI Bank's
assets before that court, reaching a settlement with regards to that law suit and filing a
stipulated order for its approval before that court. These activities enjoy the benefits and
protections of the state's laws, making it reasonable to require these defendants to submit
to the burdens of litigation in this forum. There is a so substantial connection between
these defendants and the forum state that having to defend this claim was foreseeable if
that claim and its legal proceedings caused damages to third parties like plaintiff. The

significant activities created a 'continuing obligation' between these defendants and a Maryland court which invoked the benefits and protections of Maryland law.

13. The present claim against defendants' J Cohen, B. Theisman, A. Kostner, and K. DiPrima arises out of these significant activities directed to the forum state because as claimed below, plaintiff's harm and injury arises out of these significant activities.

14. Exercising jurisdiction over these defendants is reasonable under the Due Process Clause and would not offend traditional notions of fair play and substantial justice. J Cohen, B. Theisman, A. Kostner, and K. DiPrima work for the FTC with offices in Washington DC. No burden is caused to the defendants by having to travel 45 minutes by car to appear before these court.   J Cohen, B. Theisman, A. Kostner, and K. DiPrima through their activities of filing documents with courts in this state have asserted false statements/omissions to the forum state's courts which they knew or should have known to be false. These false statements/omissions includes pursuing a claim without Congressional mandate and obtaining relief which they knew or should have known made persons not involved in AI Bank's conduct and not under the supervision of the FTC pay for damages they alleged were caused only by AI Bank. As a result, Maryland has a substantial and legitimate interest in providing a forum to resolve the present claim. No other state is better suited to deal with these defendants' acts which amount to fraud on a Maryland court. Plaintiff also has a weighty interest in litigating this claim in a single forum because if jurisdiction is not granted over these defendants, plaintiff will have to litigate the present claim in at least two or three jurisdictions.  This interest coincides with the interest of this State, as well as the interest of the interstate judicial

5

system, in providing a single forum for the litigation of disputes that arise from business transacted in this state and the interstate judicial system's interest in obtaining the most efficient resolution of controversies.

15. J Cohen, B. Theisman, A. Kostner, and K. DiPrima do not enjoy absolute immunity, qualified immunity or any other form of immunity under federal statutes because the acts giving rise to the present claim were performed outside the scope of their authority. These defendants litigated against AI Bank which is a bank. The US Congress explicitly denied authority to the FTC and its agents to pursue banks under USC 15 U.S. Code § 45(a)(2) which explicitly dis-empowers and precludes the FTC from taking action against banks.

16. The court has jurisdiction over R. Slaughter, N. Phillips, R. Chopra, C. Wilson, and J. Simmons under Maryland's long-arm statute § 6-103 (b)(1) because J Cohen, B. Theisman, A. Kostner, and K. DiPrima were their agents. R. Slaughter, N. Phillips, R. Chopra, C. Wilson, and J. Simmons approved among other the filing of the claim against AI Bank, the filing of a motion to freeze AI Banks' assets and the filing of the motion to approve the settlement with AI Bank, all giving rise to the present claim. They then directed J Cohen, B. Theisman, A. Kostner, and K. DiPrima to make those filing which give rise to the present claim. As a result, this court has jurisdiction over these defendants for the same reasons it has jurisdiction over J Cohen, B. Theisman, A. Kostner, and K. DiPrima.

17. For the same reasons giving regarding J Cohen, B. Theisman, A. Kostner, and K. DiPrima lack of immunity, the defendants R. Slaughter, N. Phillips, R. Chopra, C. Wilson, and J. Simmons lack any for of immunity regarding this claim.

18. The Court has jurisdiction over C Magid under § 6-103 (b)(4) because he is a lawyer admitted to the Maryland bar and as a result he regularly does or solicits business, engages in persistent courses of conduct in the State and derives substantial revenue from services used or consumed in the State.

19. The Court also has jurisdiction over C Magid under § 6-103 (b)(1) because he transacted business in Maryland when he voluntarily and deliberately appeared before the Maryland US District Court to defend AI Bank, failed to properly defend AI Bank when he failed to note that the FTC was acting outside the scope of its authority and jointly moved that court to approve a settlement, all of which give rise to the present claim. It was foreseeable that these acts would cause harm and injury to AI Bank's depositors and their beneficiaries (like plaintiff) and therefore foreseeable that C Magid would be brought before this court as a result of his legal malpractice in this forum and his assertion of false statements/omissions made to that court which rise to carrying out fraud on the court.

20. Jurisdiction over C Magid does not offend the traditional notions of fair play and substantial justice for the same reasons given for J Cohen, B. Theisman, A. Kostner, and K. DiPrima.

21. The Court has jurisdiction over AI Bank under under § 6-103 (b)(1) because it voluntarily and deliberately moved the US District Court to approve the stipulated order implementing the settlement with the FTC. This activity enjoys the benefits and

7

protections of the state's laws, making it reasonable to require this defendant to submit to the burdens of litigation in this forum. There is a so substantial connection between this defendants and the forum state that having to defend this claim was foreseeable because the settlement of the claim caused damages to third parties like plaintiff. The significant activity created a 'continuing obligation' between this defendant and a Maryland court which invoked the benefits and protections of Maryland law.

22. Jurisdiction over AI Bank also exists under § 6-103 (b)(4) because C Magid acted its agent and this court has jurisdiction over C Magid. AI Bank voluntarily and deliberately appointed C Magid to represent it in the matter against the FTC. and therefore it was foreseeable that AI Bank respond to claims in this forum involving the legal malpractice and other acts perpetrated by C Magid.

23. Jurisdiction over AI Bank does not offend the traditional notions of fair play and substantial justice for the same reasons given for C Magid, J Cohen, B. Theisman, A. Kostner, and K. DiPrima.

24. AI Bank was the agent of The Government of Belize, J Grant, J Murillo and the Central Bank of Belize because under section 106 of the Domestic Banks and Financial Institutions Act (2012 Belize), the Government of Belize revoked the banking charter of AI Bank, and the Central Bank of Belize at the direction of J Grant took over AI Bank, placed it into liquidation and appointed J Murillo as its liquidator as well as appointed C Magid to represent AI Bank before the Maryland US District Court. Thereby making these defendants responsible for C Magid's and AI Bank's acts of legal malpractice in this

8

forum and the assertion of false statements/omissions made to that court which rise to carrying out fraud on the court.

25. Jurisdiction over The Government of Belize, J Grant, J Murillo and the Central Bank of Belize does not offend the traditional notions of fair play and substantial justice for the same reasons given for AI Bank C Magid, J Cohen, B. Theisman, A. Kostner, and K. DiPrima.

26. The Government of Belize, Grant and the Central Bank of Belize lack any form of sovereign immunity under 28 U.S. Code § 1605 because 1) the claim is based on the FTC litigation with their agent AI Bank and liquidation of their agent AI Bank, both being commercial activities, in the United States, and 2) the action is based on acts perpetrated by their agent AI Bank in Belize (outside the United States) in connection with the liquidation of their agent AI Bank (a commercial activity) which caused a direct effect in the United States (the physical injuries caused to plaintiff as described below).

## ALLEGATIONS COMMON TO ALL COUNTS

27. Plaintiff was dedicated between 2011 and 2016 to the development of carbon forestry projects under the Verified Carbon Standard to avoid the planned deforestation of the Bolivian Amazon forest.

28. One of these projects produced verified carbon credits which the plaintiff intended to sell to cover his costs and future maintenance of that project.

29. On or about early 2016 and under the advice of AI Bank's employees, plaintiff directed his wife to form the company Palma Efuus Ltd in Belize and opened a bank account with AI Bank in the name of that company.

30. Plaintiff's wife charged plaintiff with the responsibility for the daily operations of Palma Efuus Ltd with sufficient powers to enter agreements with producers of carbon credits like plaintiff.

31. Plaintiff (responsible for the daily operations of Palma Efuus Ltd) entered an agreement with plaintiff (producer of verified carbon credits) to act as his agent and broker for the sale of carbon credits as well as to hold the proceeds of the sales in the bank account of Palma Efuus Ltd thereby making Plaintiff a third party beneficiary of the bank account which had been opened with the sole and express purpose of servicing Plaintiff with regards to the sale of the verified carbon credits produced in Bolivia.

32. Several sales of verified carbon credits took place and the proceeds were deposited with Palma Efuus ltd bank account held with AI Bank.

33. AI Bank was in full knowledge as a result of their "know your client" policies and emails exchanged with plaintiff and his wife that the deposits arose from the sale of verified carbon credits produced by Plaintiff's carbon forestry project in Bolivia.

34. As a result of AI Bank's involvement in the real estate scam known as the Belize Sanctuary Scam, The FTC commissioners approved to file a claim against AI Bank and eventually filed a claim before this court (1:18−cv−03309−PJM) on 31 October 2018 through their legal team. The FTC defendants failed to tell the Messitte court that it was acting outside the scope of its authority when they pursued a claim against AI Bank.

10

35. Plaintiff incorporates to this claim the pleadings by the FTC to this claim as his own: Dkt 1 of 1:18−cv−03309−PJM.

36. For the avoidance of doubt, the FTC claimed in its pleadings that AI Bank offered banking services to unsuspecting victims of the Belize Sanctuary Scam.

37. The FTC then filed a motion to freeze assets against AI Bank for an amount greater than all of AI Banks equities and assets held which produced a bank run, caused the Government of Belize to revoke AI Bank's banking charter and caused the Central Bank to take over AI Bank thereafter placing it in liquidation. The FTC defendants failed to tell the Messitte court that such an asset freeze would produce a bank run because the amounts it sought to freeze exceeded the equity of AI Bank and the totality of assets held by AI Bank.

38. AI Bank filed several (Dkt 64, 166, 392) motions to dismiss for lack of personal jurisdiction which were denied and later denied on appeal before the Fourth Circuit Court.

39. C Magid failed to argue before that court that the FTC was acting outside the scope of its authority (and that the US Congress explicitly curtailed that authority) by suing AI Bank which was a bank.

40. As a result of the claim, the Government of Belize revoked AI Banks's bank charter, the Central Bank of Belize and Mrs Grant placed AI Bank in liquidation and took over the bank and appointed Murillo as its liquidator. As a result of which AI Bank became the agent of The Central Bank of Belize, Mrs Grant, the Government of Belize and Murillo.

11

41. J Murillo notified plaintiff that AI Bank was put in liquidation on or about May 2019 and without specifying the forum or the case number notified plaintiff that the FTC was litigating against AI Bank.

42. Plaintiff contacted the FTC's legal team by phone and with great emotional distress told them of the harm and physical injury, both financial and emotional, that the FTC was causing plaintiff as a result of the bank run it had created as well as asked the FTC's legal team to stop the litigation which was causing him great harm and physical injury.

43. The FTC's legal team, now aware of the harm it was causing to plaintiff and other 1000 US taxpaying and resident depositors, disregarded plaintiff's request and plowed ahead with the claim against AI Bank knowing full well that it was acting outside the scope of its authority and knowing the harm it was causing plaintiff and other depositors.

44. In addition, because said knowledge cause emotional distress among the legal team, the legal team had its federal security police call plaintiff to threaten him with criminal prosecution if he continued to beg to members of the legal team to stop their acts which were causing him great mental distress and physical injury as a result of depriving him of his assets.

45. As a result of the FTC claim, plaintiff was deprived of any access to his monies held in the Palma Efuus ltd account with AI Bank for more than 12 months. In turn, causing great mental stress because monies that were for the purpose of paying his son's senior year at Illinois University were not longer available putting in doubt, after paying over $200,000 for his son to graduate from college, that his son would be able to graduate

specially when plaintiff lacked the credit or collateral to request a student loan for his son.

46. As a result of the asset freeze, AI Bank appeared before the Southern Florida Bankruptcy Court (Case 19-16286) seeking a recognition order of the Belize bankruptcy proceedings which the FTC opposed (Dkt 58) on the grounds among other of the egregious involvement of both the prime minister and Mrs Grant in the Belize Sanctuary scam and their corruption in that scam.

47. Plaintiff incorporates to this claim the pleadings made by the FTC in its opposition to Objection to Petition for Recognition of Foreign Proceeding filed by Debtor Atlantic International Bank Limited (Case 19-16286, Dkt 58).

48. Negotiations between AI Bank and its principals with the FTC led to the settlement for $23mn and which all defendants knew or should have known (as a result of among others Belize's highly developed corruption, the involvement of the prime minister and Mrs Grants in the corruption and the publicly available balance sheets of AI Bank) would inevitably make depositors and their beneficiaries like plaintiff pay for the settlement. The joint motion requesting approval of the settlement settlement (Dkt 600) was approved by Messitte J (Dkt 607).

49. Plaintiff complained to the FTC defendants as early as May 2019 that its actions were causing him harm but the FTC defendants opted to have its police threaten him with criminal charges; and also complained on 20 September 2019 to the Belize defendants that the settlement would be in breach of the priority of payments applicable under Belize law and who chose instead to ignore his complaints.

13

50. As a result of the Belize defendants' fraud on the court in the Southern Florida
Bankruptcy Court perpetrated as a result of their failure to notify foreign creditors under
the US Code 11 U.S. Code § 1514, the Belize defendants through their agent and the FTC
defendants were able to obtain a recognition order which allowed the FTC to be paid
before any depositor and or creditor in violation of both Belize applicable priority of
payment and US law regarding equality of creditors.

51. The defendants then appeared before the Messitte court asking Messitte J to approve the
stipulated order subject of the Southern Florida Bankruptcy Court. However, all
defendants failed to tell the Messitte J that the settlement amount exceeded the equity
held by AI Bank which along with the high risk of corruption in Belize, the involvement
of the prime minister and Mrs Grant in the Belize Sanctuary scam as well as the
ownership (through proxy or otherwise) of the prime minister and his allies of AI Bank
through its parent company Atlantic Bank guaranteed, as eventually happened, that
depositors and their beneficiaries like plaintiff would end up paying most if not all of the
entire settlement.

52. J Murillo with the approval of J Grant, the Central Bank of Belize and the Belize
government sold AI Bank's loan portfolio well below its market value to its parent
company, Atlantic Bank, which enabled the parent company to walk out of the ordeal
without little if any losses as a result of AI Bank's failure and settlement and to transfer
these losses to the depositors and their beneficiaries.

53. As a result of the acts described above, plaintiff was deprived access to the totality of his
assets for more than 12 months (from May 2019 to June 2020) and subsequently suffered

financial losses equal to 31% of the total value of his assets prior to AI Banks' liquidation.

## DAMAGES

54. As a result of loosing access to his assets and financial losses incurred, plaintiff suffered the following damages: premature aging, anxiety, increase in blood pressure, thickening of the heart walls, nightmares and flashbacks, unwanted distressing and/or violent thoughts, feeling of hopelessness, numbness, and feeling bad about himself and wishing harm on others, physical reactions to anything that reminded him of the traumatic evens including abdominal pain, diarrhea and intestinal bleeding.

55. Plaintiff had no contributory fault to the harm caused to him by the defendants because neither him nor his agent (Palma Efuus Ltd) had any knowledge of the acts perpetrated by AI Bank prior to them taking place, had no power to prevent or influence said acts, had no authority over AI Bank, had no power to appoint AI Bank's officers or other authorities who were involved in the scam or who could prevent AI Bank's participation in the scam, were not aware of the FTC litigation against AI Bank until AI Bank was placed into liquidation, were not aware of where the FTC litigation was taking place and case number until well after the settlement was approved by the Maryland Court, were not aware of the place or case number of the bankruptcy proceedings until well after the recognition order allowing the settlement was approved, were not parties to any of those litigations[1]. Plaintiff mitigated because he requested the defendants (save C Magid) to stop the harm and physical injury that their acts were causing him.

---

1  AI Bank failed to notify plaintiff or his agent of the bankruptcy proceedings in breach of 11 U.S. Code § 1514.

56. As a result, plaintiff brings in this claim the following counts against the defendants.

## COUNTS

### Count 1: The FTC Defendants; Negligent Misrepresentation Involving Risk Of Physical Harm; FTC lacked standing to sue

57. The FTC officers of the court defendants owed duty to care to the Messitte court to promote justice and uphold the law because they are officers of the court.

58. The FTC commissioners defendants owed duty of care to the Messitte court to uphold the law because they are appointed officers of the US Government with congressional approval.

59. The FTC defendants asserted the statement/omission to Messitte J in the FTC claim filed with the Messitte court that AI Bank was not a bank in the sense of 15 U.S. Code § 57a (f)(2) such that the FTC was acting inside the scope of its authority under 15 U.S. Code Chapter 2 when it filed the claim against AI Bank before the Messitte court.

60. However, the statement/omission made to Messitte J that AI Bank was not a bank was false because: AI Bank Belize was a branch and agency of the foreign bank AI Bank whose only line of business was offering banking services, AI Bank had a charter issued by the Central Bank of Belize to carry out banking activities, AI Bank was offering banking service to the victims of the Belize Sanctuary Scam and said offering of banking services in the US was the basis of the FTC claim against AI Bank, AI Bank was regulated by the federal government's Foreign Account Tax Compliance Act. Therefore,

AI Bank was a bank within the meaning of 15 U.S. Code § 57a (f)(2) and the FTC negligently asserted the false statement to Messitte J that AI Bank was not bank.

61. Alternatively, the FTC accurately asserted that AI Bank was a bank but asserted the statement/omission that the FTC was acting outside the scope of its authority by filing a claim against AI Bank.

62. However, the statement/omission to Messitte J that the FTC was acting inside the scope of its authority for filing claims against banks is false because USC 15 U.S. Code § 45(a) (2) explicitly dis-empowers and precludes the FTC from preventing banks from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce.

63. The FTC defendants intended these false statements /omissions be acted upon by Messitte J, in order to pursue the claim against AI Bank because they were made for the sole purpose of forming part of the record before Messitte J which Mesitte J would rely on to make a ruling regarding the FTC authority to pursue the claim against AI Bank.

64. The FTC defendants had knowledge that Messitte J would probably rely on the false statements/omissions which if erroneous would cause injury to plaintiff because Messitte J had the duty to evaluate the record before him in order to make a ruling.

65. Messitte J justifiably, as a result of his obligation to promote justice and uphold the law as well as his duty to adjudicate, acted on those false statements/omissions and allowed the FTC claim against AI Bank to move forward even when the FTC lacked any authority and jurisdiction to pursue its claim against AI Bank.

17

66. It was foreseeable to the FTC defendants that their representations would lead to bank run, loss of charter and liquidation of AI Bank as well as the consequential physical harm to AI Bank's depositors and their third party beneficiaries like plaintiff that would follow as a result of being deprived of their life savings even when they had no saying whatsoever, either directly or indirectly, regarding any business decisions made by AI Bank including those alleged in the FTC claim before the Messitte court.

67. Plaintiff suffered damage proximately caused by the defendant's misrepresentations because the claim against AI Bank was allowed to proceed thereby causing him damages as described in the damages section above.

68. Even though the FTC's defendants' negligent misrepresentations were not made to plaintiff, this count stands under Tyron White vs. Kennedy Krieger Institute, Inc. 1015/2013.

**Count 2: The FTC Defendants; Negligent Misrepresentation Involving Risk Of Physical Harm; FTC seizes plaintiff property**

69. The FTC officers of the court defendants owed duty to care to the Messitte court to promote justice and uphold the law because they are officers of the court.

70. The FTC commissioners defendants owed duty of care to the Messitte court to uphold the law because they are appointed officers of the US Government with congressional approval.

71. In their motion to freeze AI Bank's assets, the FTC defendants asserted the statement/omission to Messitte J in the FTC claim filed with the Messitte court that the

assets that would be frozen were the property of AI Bank and not that of the depositors and their beneficiaries.

72. However, this statement/omission made to Messitte J was false because the monies sought to be frozen exceeded AI Bank's equity and because the order ended up freezing plaintiff's assets.

73. The FTC defendants intended these false statements /omissions be acted upon by Messitte J in order to force AI Bank into a settlement.

74. Messitte J justifiably, as a result of his obligation to promote justice and uphold the law as well as his duty to adjudicate, acted on those false statements/omissions and approved the motion to freeze AI Banks' assets.

75. Plaintiff suffered damage proximately caused by the defendant's misrepresentations because AI Bank's asset freeze was approved thereby causing him damages as described in the damages section above.


**Count 3: All Defendants; Negligent Misrepresentation Involving Risk Of Physical Harm; FTC makes plaintiff pay for AI Bank's alleged acts**

76. The FTC officers of the court defendants and C Magid owed duty to care to the Messitte court to promote justice and uphold the law because they are officers of the court.

77. The FTC commissioners defendants owed duty of care to the Messitte court to uphold the law because they are appointed officers of the US Government with congressional approval.

78. The Belize defendants owed duty of care to the Messitte court not to conceal the true harm arising from a stipulated order.

79. In their stipulated order, the defendants asserted the statement/omission to Messitte J in the FTC claim filed with the Messitte court that depositors and their beneficiaries (who had not engaged in any unfair practice or otherwise and who had not act, part or control over AI Bank) would not be held accountable for AI Bank's alleged acts.

80. However, this statement/omission made to Messitte J was false because the depositors and their beneficiaries like plaintiff ended paying part, if not all, of the $23mn.

81. The FTC defendants intended these false statements /omissions be acted upon by Messitte J, because otherwise the stipulated order would not have been approved.

82. Messitte J justifiably, as a result of his obligation to promote justice and uphold the law as well as his duty to adjudicate, acted on those false statements/omissions and approved the stipulated order.

83. Plaintiff suffered damage proximately caused by the defendant's misrepresentations the settlement with AI Bank was approved thereby causing him damages as described in the damages section above.

**Count 4: The FTC Defendants; Negligent Personal Injury; Failure to uphold the law**

84. The FTC defendants who are officers of the court owed a duty to care to plaintiff to uphold the law because they are officers of the court and have sword to uphold the law.

85. The FTC commissioners defendants owed duty of care to the Messitte court to uphold the law because they are appointed officers of the US Government with congressional approval.

86. The FTC defendants breached the duty to uphold law because they breached USC 15 U.S. Code § 45(a)(2) which precludes the FTC from suing banks when they initiated legal proceedings against AI Bank, a bank.

87. As a result of initiating legal proceedings against AI Bank, a bank, plaintiff was deprived of all his assets held with AI Bank for over 12 months and thereafter lost approximately 31% of his assets as well as dealt with an extremely emotional and stressful situation.

88. As a result of being deprived of all his assets held with AI Bank for over 12 months and thereafter lost approximately 31% of his assets as well as dealing with an extremely emotional situation, plaintiff suffered damages as described in the damages section above.

**Count 5: The FTC Defendants; Negligent Personal Injury; Causing a bank run**

89. The FTC Defendants owed a duty of care to plaintiff, as mandated by USC 15 U.S. Code § 45(a)(2), not interfere with the banking system in general and AI Bank in particular because banks are explicitly excluded from USC 15 U.S. Code § 45(a)(2).

90. The FTC defendants breached that duty because they filed a motion to freeze AI Bank's assets for amounts which exceeded both AI Bank's asssets held and AI Bank's equity.

91. The filing of said motion caused a bank run of AI Bank which caused it to be put into liquidation.

92. As a result of filing said motion which forced AI Bank to be put into liquidation, plaintiff was deprived of all his assets held with AI Bank for over 12 months and thereafter lost approximately 31% of his assets as well as dealt with an extremely emotional and stressful situation.

93. As a result of being deprived of all his assets held with AI Bank for over 12 months and thereafter lost approximately 31% of his assets as well as dealing with an extremely emotional situation, plaintiff suffered damages as described in the damages section above.

**Count 6: The FTC Defendants; Negligent Personal Injury; Failure to prevent the freezing of plaintiff's assets**

94. The FTC Defendants owed a duty of care to plaintiff as mandated by USC 15 U.S. Code § 45(a)(2) not to harm plaintiff because plaintiff is an individual not involved in using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce.

95. The FTC defendants breached that duty because they filed a motion to freeze AI Bank's assets for amounts which exceeded AI Bank's equity and therefore froze plaintiff's assets as well.

96. As a result of filing said motion, plaintiff was deprived of all his assets held with AI Bank for over 12 months as well as dealt with an extremely emotional and stressful situation.

97. As a result of being deprived of all his assets held with AI Bank for over 12 months and thereafter losing approximately 31% of his assets as well as dealing with an extremely

22

emotional situation, plaintiff suffered damages as described in the damages section above.

**Count 7: The FTC Defendants; Negligent Personal Injury; Failure to protect consumers**

98. The FTC Defendants had a duty of care to plaintiff as mandated by USC 15 U.S. Code § 45(a)(2) to protect him from the use of unfair methods affecting commerce and unfair or deceptive acts or practices in or affecting commerce.

99. The FTC Defendants breached that duty when the FTC Defendants (But not the FTC) engaged in the unfair practice of affecting commerce between AI Bank and depositors and their beneficiaries like plaintiff, including but not limited to carrying out litigation when it lacked authority to do so, causing a bank run, making non intervening parties pay for damages caused by AI Bank.

100.     As a result of the FTC defendants' use of unfair methods affecting commerce and unfair or deceptive acts or practices in or affecting commerce plaintiff was deprived of all his assets held with AI Bank for over 12 months and thereafter lost approximately 31% of his assets as well as dealt with an extremely emotional and stressful situation.

101.     As a result of being deprived of all his assets held with AI Bank for over 12 months and thereafter losing approximately 31% of his assets as well as dealing with an extremely emotional situation, plaintiff suffered damages as described in the damages section above.

23

**Count 8: FTC defendants;  Negligent Personal Injury; Making depositors and their beneficiaries pay for damages for which they are not responsible**

102.     The FTC Defendants had a duty of care to plaintiff as mandated by USC 15 U.S. Code § 45(a)(2) to seek compensation from only those engaged in the use of unfair methods affecting commerce and unfair or deceptive acts or practices in or affecting commerce.

103.     The FTC Defendants breached that duty when they sought a settlement with AI Bank which effectively made plaintiff responsible for paying with 31% of his assets held by AI Bank for the damages caused by AI Bank.

104.     As a result of the FTC defendants' breach of duty plaintiff lost approximately 31% of his assets as well as dealt with an extremely emotional and stressful situation.

105.     As a result of being deprived of all his assets held with AI Bank for over 12 months and thereafter losing approximately 31% of his assets as well as dealing with an extremely emotional situation, plaintiff suffered damages as described in the damages section above.


**Count 9: The FTC Defendants; Negligent Personal Injury; Seizure of private property**

106.     The FTC Defendants had a duty of care to plaintiff as mandated by the US Constitution and Bill of Rights not to seize his private property without cause.

107.     The FTC Defendants breached that duty when they sought a settlement with AI Bank which effectively made plaintiff responsible for paying with 31% of his assets held by AI Bank for the damages caused by AI Bank.

108.     As a result of the FTC defendants' breach of duty plaintiff lost approximately 31% of his assets as well as dealt with an extremely emotional and stressful situation.

109.     As a result of losing approximately 31% of his assets as well as dealing with an extremely emotional situation, plaintiff suffered damages as described in the damages section above.

**Count 10: FTC Defendants; Negligent Personal Injury; Avoidance of Equal Treatment of Creditors**

110.     The FTC Defendants owed a duty of care to plaintiff to uphold US laws including US bankruptcy laws which require the equal treatment of creditors.

111.     The FTC breached that duty as a result of seeking and successfully managing to get paid ahead of the rest of creditors.

112.     As a result of the FTC defendants' breach of duty plaintiff lost approximately 31% of his assets as well as dealt with an extremely emotional and stressful situation.

113.     As a result of losing approximately 31% of his assets as well as dealing with an extremely emotional situation, plaintiff suffered damages as described in the damages section Counts above.

**Count 9: Belize Defendants; Negligent Personal Injury; Failure to uphold the laws of Belize**

114.    The Belize Defendants had a duty to plaintiff (through his broker/agent Palma

Efuus Ltd) to uphold the laws of Belize and in particular the Domestic Banks and Foreign

Institutions Act (2012).

115.    The Belize Defendants breached that duty when they did not follow the priority of

payments set out in the Domestic Banks and Foreign Institutions Act (2012) applicable to

AI Bank's liquidation.

116.    As a result of the Belize defendants' breach of duty plaintiff lost approximately

31% of his assets as well as dealt with an extremely emotional and stressful situation.

117.    As a result of losing approximately 31% of his assets as well as dealing with an

extremely emotional situation, plaintiff suffered damages as described in the damages

section above.


**Count 11: Belize Defendants; Negligent Personal Injury; Selling loan portfolios well below**

**market value to AI Bank's parent company in order to make depositors and their**

**beneficiaries fully pay for the $23mn settlement.**

118.    The Belize Defendants owed a duty of care to plaintiff (through his broker/agent

Palma Efuus Ltd) to liquidate AI Bank's loan portfolio at its market value.

119.    The Belize Defendants breached that duty of care when they sold the loan

portfolio to AI Bank's parent company well below the market value AI Bank had

repeatedly declared to the Central Bank of Belize in their balance sheets submitted to the

Central Bank of Belize and which the Central Bank of Belize had approved and

disseminated as accurate.

120.     As a result of the Belize defendants' breach of duty plaintiff lost approximately 31% of his assets as well as dealt with an extremely emotional and stressful situation.

121.     As a result of losing approximately 31% of his assets as well as dealing with an extremely emotional situation, plaintiff suffered damages as described in the damages section above.

**Count 12: C Madig; Negligent Personal Injury; failure to properly defend AI Bank**

122.     C Magid had a duty of care to defend AI Bank within the expectations of his profession.

123.     C Magid breached that duty of care when he did not use the defense that AI Bank was a bank and therefore that the FTC had no jurisdiction to file a claim against AI Bank because USC 15 U.S. Code § 45(a)(2) explicitly prevented him from doing so.

124.     As a result of C Magid breach of duty, legal proceedings against AI Bank, a bank, continued and plaintiff was deprived of all his assets held with AI Bank for over 12 months and thereafter lost approximately 31% of his assets as well as dealt with an extremely emotional and stressful situation.

125.     As a result of being deprived of all his assets held with AI Bank for over 12 months and thereafter lost approximately 31% of his assets as well as dealing with an extremely emotional situation, plaintiff suffered damages as described in the damages section above.

27

**Count 13: FTC Defendants; Negligent Personal Injury; failure to avoid interfering with banks and the banking system**

126.    The FTC Defendants owed a duty of care to plaintiff not to interfere with the banking system because USC 15 U.S. Code § 45(a)(2) explicitly precluded the FTC from doing so.

127.    The FTC defendants breached that duty when they initiated legal proceedings against AI Bank, a bank part of the banking system.

128.    As a result of FTC defendants' breach of duty, plaintiff was deprived of all his assets held with AI Bank for over 12 months and thereafter lost approximately 31% of his assets as well as dealt with an extremely emotional and stressful situation.

129.    As a result of being deprived of all his assets held with AI Bank for over 12 months and thereafter lost approximately 31% of his assets as well as dealing with an extremely emotional situation, plaintiff suffered damages as described in the damages section above.

**Count 14: The FTC Defendants; Conscious/Fraudulent Misrepresentation Involving Risk Of Physical Harm; FTC lacked standing to sue**

130.    Plaintiff repeats the allegations made in count 1.

131.    As stated in count 1, the FTC defendants asserted statements/omissions to Messitte J that were false.

132.    The FTC defendants knew that the asserted statement/omission that AI Bank was not a bank was false because: it was suing AI Bank for offering banking services in the

28

US, it knew or should have known that AI Bank had a banking license issued by the Central Bank of Belize, it knew or should have known that it took deposits, plaintiff call the FTC and told a member of the legal team dealing with the claim that he could no longer access his monies deposited in a bank account at AI Bank.

133.    The FTC defendants knew that the asserted statement/omission that the FTC could pursue a claim against a bank was false because the defendants were public appointed officials to run the FTC or were officers of the court, all required to understand the powers and limits of the FTC enacted by the US Congress.

134.    The FTC defendants asserted the statement/omission to defraud the Messitte court. Only as a result of the asserted statement/omission could the FTC be allowed to move forward the claim against AI Bank. Had the FTC defendants made it plain to that court that the FTC was precluded by the US Congress to pursue claims against banks like AI Bank, Messitte J would have dismissed the claim against AI Bank for lack of standing to sue banks.

135.    Messitte court relied on FTC defendants asserted the statement/omission because it allowed the FTC claim against AI Bank to move forward even when it lacked subject matter jurisdiction.

136.    Plaintiff suffered the damages stated in count 1 because Messitte J allowed the claim against AI Bank to move forward.

**Count 15: The FTC Defendants; Negligent Misrepresentation Involving Risk Of Physical Harm; FTC seizes plaintiff property**

137.     Plaintiff repeats the allegations made in count 2.

138.     As stated in count 2, the FTC defendants asserted statements/omissions to
Messitte J that were false.

139.     The FTC defendants knew that the asserted statement/omission that only AI
Bank's property would be seized was false because it knew or should have known that
the amount of equity AI Bank had from its balance sheets available in the website of the
Central Bank of Belize and/or through a query to the Belize company registry.

140.     The FTC defendants asserted the statement/omission to defraud the Messitte
court. For only then they could put AI Bank into an impossible situation in order to force
it to settle the FTC claim against AI Bank.

141.     The Messitte court relied on FTC defendants asserted statement/omission because
it granted the FTC motion to seize AI Bank's assets even when it also seized plaintiff's
property.

142.     Plaintiff suffered the damages stated in count 2 because Messitte J granted that
motion.


**Count 16: All Defendants; Negligent Misrepresentation Involving Risk Of Physical Harm;
FTC makes plaintiff pay for AI Bank's alleged acts**


143.     Plaintiff repeats the allegations made in count 3.

144.     As stated in count 3, the FTC defendants asserted statements/omissions to
Messitte J that were false.

30

145.    The FTC defendants knew that the asserted statement/omission were false because it knew or should have known that the amount of the settlement exceeded the equity of AI Bank, and knew or should have known that the high level of corruption (as noted in its objection to the Recognition Order filed before the Southern Florida Bankruptcy Court) would have made depositors and their beneficiaries like plaintiff pay for most if not all of the $23mn as it eventually occurred.

146.    The FTC defendants asserted the statement/omission to defraud the Messitte court. For with the knowledge that persons who had not been engaged in unfair practices or otherwise and who had no act or part or control in AI Bank's alleged acts, Messitte J could not have approved the stipulated order.

147.    Messitte court relied on FTC defendants asserted the statement/omission because it approved the stipulated order.

148.    Plaintiff suffered the damages stated in count 3 because Messitte J granted that motion.


**Count 17: FTC Defendants; intentional infliction of emotional distress**

149.    The conduct by the FTC defendants to pursue a claim against AI Bank was intentional and reckless because they knew the FTC lacked the mandate to pursue against AI Bank, a bank.

150.    The conduct by the FTC defendants to deprive AI Bank's depositors and their third party beneficiaries of their lifesaving for more than 12 months and to make them pay for the damages alleged in the FTC claim against AI Bank was intentional and

31

reckless because they knew these parties had no act or part on the alleged acts by AI Bank and had no power or authority to affect the conduct of AI Bank. The FTC defendants also knew that plaintiff was in great emotional distress as far back as May 2019 but nevertheless decided to plow forward knowing that such acts were already causing great emotional distress and would cause even more emotional distress.

151.     The conduct by the FTC defendants were extreme and outrageous because 1) the FTC defendants disregarded their duties as officers of the court and federal appointed official to promote and uphold the law and the FTC defendants disregarded the constitutional checks and limits imposed by the US Congress to the executive branch regarding the FTC powers to sue banks, 2) the FTC defendants made AI Bank's depositors and their third party beneficiaries like plaintiff who had no act or part on the alleged acts by AI Bank and who had no power to affect the conduct of AI Bank pay for AI Banks alleged behavior, thereby breaching plaintiff's constitutional rights not to have his property seized, 3) the FTC defendants knew that they were breaching US bankruptcy law regarding equality of creditors, 4) the FTC defendants knew that the settlement was effectively a seizure of depositors and their beneficiaries' private property in violation of the US Constitution, 5) the FTC defendants knew and were fully aware of the consequences described in the counts described in this claim, 6) made representations to Messitte J which they knew or should have known were false and 7) these defendants made fraud on the court as a result of said representations.

152.     It was but for the FTC defendants' decision to pursue the claim against AI Bank that forced AI Bank into liquidation and subsequently deprived plaintiff access to his life

savings for more than 12 months and later 31% of his assets that caused plaintiff to suffer emotional distress.

153.     It was but for the FTC defendants decision to settle the claim for an amount which would inevitably make depositors and their third party beneficiaries[2] like plaintiff, pay for AI Banks alleged behavior that caused plaintiff's property to seized for the benefit of the US government in violation of the Bill of Rights that caused plaintiff to suffer additional emotional distress.

154.     The emotional distress in both instances was severe because it included symptoms like great anxiety, trouble sleeping and upsetting dreams or nightmares about the traumatic event, recurrent, unwanted distressing and/or violent thoughts, unwanted and upsetting wishes of harm to the FTC defendants as well as physical injury including graying hair, permanent increase blood pressure and thickening of the heart walls, physical reactions to anything that reminded him of the traumatic evens including abdominal pain, diarrhea and intestinal bleeding as well as the physical injuries listed in the damages section above.

**Count 18: Belize Defendants and C Magid; intentional infliction of emotional distress**

155.     The conduct by the Belize defendants and C Magid to settle the claim against AI Bank was intentional and reckless because

156.     The conducts by these defendants were extreme and outrageous because 1) they knew that the FTC settlement was in breach of the priority of payments applicable under

---

[2] who had no act or part on the alleged acts by AI Bank and who had no power to affect the conduct of AI Bank.

Belize law, 2) the knew, as it happened, that the settlement was to be paid in full by the depositors and their beneficiaries, 3) the Belize defendants knew and were fully aware of the consequences of their acts as described in this claim, 4) the Belize defendants made representations to Messitte J which they knew or should have known were false, and 5) the Belize defendants made fraud on the court as a result of said representations.

157.    It was but for the Belize defendants' decision to breach the laws they swore and/or were required to uphold that caused plaintiff's property to seized for the benefit of the US government in violation of the Bill of Rights that caused plaintiff to suffer additional emotional distress.

158.    It was but for the Belize's defendants' decision to sell the loan portfolio at a price well below its market value and transfer the liability of the FTC settlement from the parent bank, Atlantic Bank, to the depositors and their beneficiaries that caused plaintiff's property to be seized for the benefit of the US government in violation of the Bill of Rights that caused plaintiff to suffer additional emotional distress.

159.    The emotional distress in both instances was severe because it included symptoms like great anxiety, trouble sleeping and upsetting dreams or nightmares about the traumatic event, recurrent, unwanted distressing and/or violent thoughts, unwanted and upsetting wishes of harm to the FTC defendants as well as physical injury including graying hair, permanent increase blood pressure and thickening of the heart walls, physical reactions to anything that reminded him of the traumatic evens including abdominal pain, diarrhea and intestinal bleeding as well as the physical injuries listed in the damages section above.

34

**Count 19: All Defendants; Punitive damages**

160.     As described in the counts in this claim, all the defendants actions were deliberate, and/or are based on an evil motive or intent to cause the injuries here claimed, in the sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will and fraud because they knew at all times that they were making the most vulnerable and unrepresented party (depositors and their beneficiaries) pay for all the damages for acts for which they had no act or part and who had no power to affect the conduct of AI Bank or any other party involved in the Belize Sanctuary Scam.

161.     As a result, plaintiff seeks punitive damages as determined by the court.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff requests that the Court:

A. Award Plaintiff economic damages for future medical bills regarding his physical injuries for an amount of $1,200,000 (being the costs of 4 weekly visits over 20 years to recover from the intentional emotional distress inflicted on him),

B. Award Plaintiff non-economic damages in the amount of 5,000,000 as capped by any statute.

C.  Award Plaintiff punitive damages

D. Award Plaintiff legal interests at the statutory rate.

**PRAYER FOR JURY TRIAL**

Plaintiff asserts his right to a trail by jury.

Dated: March 23, 2021

Respectfully submitted,

Fermin Aldabe (Pro se Plaintiff)
fermin_aldabe@yahoo.com
22 Eaton Rd
Lexington MA 02420
Tel (617) 785 5445

36