## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **FERMIN ALDABE** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. PJM 21-cv-803 |
| | * | |
| **JONATHAN COHEN** *et al.,* | * | |
| | * | |
| Defendant. | * | |

### MEMORANDUM OPINION

*Pro se* Plaintiff Fermin Aldabe is a man distressed because the Atlantic Bank International

LLP (AIBL) in Belize, where his wife's company had or has an account out of which she

purportedly owed Aldabe money, entered into an agreement with the Federal Trade Commission

(FTC) to settle the FTC's claim that AIBL facilitated a wide-scale land scam in Belize in

connection with an enterprise known as Sanctuary Belize. *See* Court's Opinion of August 28, 2020,

*In re Sanctuary Belize Litigation*, PJM 18-3309, ECF No. 1020 (D. Md. Aug. 28, 2020). In his

lawsuit he asks for damages in that, among other things, the Settlement Agreement in question (to

which he was not a party) has caused him harm requiring twenty years of psychotherapy as well

as a number of physical ills. Nevertheless, despite his effort to pour his concerns into molds of

cognizable vessels of legal recovery, he has utterly failed to do so. He has seized upon legal terms

here and there that do not, all in all, in any way satisfy the requirements for legitimate recovery

against the multiple named actors he believes are responsible for his suffering. Even so, the Court

respectfully offers him the benefit of its evaluation of the claims he is attempting to assert.[1]

---

[1] The Court notes that several times Aldabe has sought its recusal from this case on the ground that the
Court itself has somehow been complicit in the ill deeds of which he complains.  As in any case, especially complex

The Court has before it five motions for resolution.

First, a Motion to Substitute by the United States (ECF No. 6), and a Motion for Leave to File a Surreply thereto (ECF No. 18).

Next, a Motion to Dismiss by Defendant Creighton Magid, who served as counsel for AIBL in the underlying Sanctuary Belize litigation (ECF No. 20), and a Motion for Leave to File a Surreply thereto (ECF No. 25).

Finally, a Motion to Dismiss by the Belize Defendants – individuals and entities associated with AIBL (ECF No 32).

For the reasons that follow, the Court **GRANTS** all the motions. With respect to the two motions to dismiss, ECF No. 20 and 32, the Court **DISMISSES WITH PREJUDICE** all Counts against those Defendants.

## I.  Factual and Procedural Background

### a.  The In re Sanctuary Belize Litigation

In 2018, the FTC initiated suit against numerous defendants who allegedly were, in violation of Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a) and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.3, perpetrating a large-scale land sales scam in the Central American country of Belize. The defendants in that case (AIBL among them) were said to be part of a common enterprise known as "Sanctuary Belize." *See* Opinion, *In Re Sanctuary Belize, supra*, ECF No. 1020. The FTC alleged that the defendants had defrauded American consumers by selling them lots at the Sanctuary Belize property, advertising them as

---

ones such as the underlying Sanctuary Belize litigation, the Court has done its best to render appropriate decisions based on the law and facts as it has found them. No litigant – Aldabe included – is entitled to more than that. Merely demanding recusal of a Judge simply because a litigant is dissatisfied with the Judge's decisions is never appropriate. A dissatisfied litigant can always pursue the remedy of appeal to an appropriate appellate court, assuming such an appeal is taken in good faith and with reasonable justification. The Court once again **DENIES** Aldabe's request, embedded in ECF No. 10, that it be recused in this case.

part of a resort which would have top-shelf amenities and offer certain investment gains, when in reality the development, as advertised, was essentially a sham.

As part of the case, in November 2018, the Court entered several orders freezing the assets of AIBL. *See In re Sanctuary Belize*, ECF Nos. 13, 14, 34. On April 12, 2019, the Central Bank of Belize revoked AIBL's license to operate and appointed a liquidator, Julian Murillo, to take care of its affairs. *See In re Sanctuary Belize,* ECF No. 607 ¶ 4. In June 2019, the FTC and AIBL entered into a Settlement Agreement, approved by the Court, whereby certain AIBL assets would transfer to the Receiver who had been appointed to manage restitution to victims of the Sanctuary Belize scheme. *See In re Sanctuary Belize,* ECF No. 607. Meanwhile, liquidation proceedings against AIBL moved forward in Belize. *See* Def. Br. ECF No. 32-1 at 3; *In re Atl. Int'l Bank Ltd.*, No. 19-bk-1286, ECF No. 86 (S.D. Fl. Sept. 19, 2019) (recognizing the Belize liquidation proceeding).

On August 28, 2020, following a trial before this Court on the merits, the Court issued a lengthy Opinion consisting of Findings of Fact and Conclusions of Law, granting a permanent injunction against certain Defendants, and ordering them to make restitution on behalf of defrauded consumers. *See In re Sanctuary Belize*, *supra*, ECF No. 1020. That decision, now on appeal at the Fourth Circuit, has no impact on the resolution of Aldabe's current claims.

### *b. Aldabe's Claims*

Aldabe raises twenty claims against Defendants including, *inter alia*, negligent misrepresentation, negligent personal injury, and intentional infliction of emotional distress.

The Complaint names fifteen Defendants, who can be divided into three groups: (1) the FTC Defendants: Johnathan Cohen, Joseph J. Simons, Rebecca Kelly Slaughter, Noah Joshua Phillips, Rohit Chopra, Christine S. Wilson, Benjamin J. Theisman, Amanda B. Kostner, Khouryanna DiPrima; (2) the Belize Defendants: Atlantic International Bank Ltd. (AIBL), Julian

Murillo (AIBL liquidator), the Central Bank of Belize, Joy Grant (Governor of Central Bank of Belize), and the Government of Belize; and (3) Creighton Magid (AIBL's counsel in the Sanctuary Belize litigation).

According to his Complaint, Aldabe headed a carbon offset project in Belize from 2011 to 2016. Compl. ¶ 27-28. Around early 2016, Aldabe's wife formed a company known as "Palma Efuus Ltd.," in Belize, which opened a bank account at AIBL. *Id.* ¶ 29. Aldabe states that it was he who ran the day-to-day operations of Palma Efuus Ltd., and contracted with himself to produce carbon credits which Palma Efuus Ltd. would broker and sell. *Id.* ¶ 21. Proceeds from the sales were allegedly deposited in the AIBL account. *Id.* ¶ 32.

Aldabe says that when the Court froze AIBL's assets, it did so in an amount greater than AIBL's assets and equities. This, Aldabe alleges, led to a run on the bank. *Id.* ¶ 37. The Government of Belize thereafter revoked AIBL's banking charter and placed it in liquidation. *Id.* ¶ 37. Thereafter the Government-appointed liquidator of AIBL negotiated a settlement of the litigation with the FTC. *Id.* at ¶¶ 40, 48. Aldabe alleges that this settlement – in the amount of some $23 million – resulted in depositors and their beneficiaries, such as Aldabe, having to personally shoulder the cost. *Id.* ¶ 48.

As a result of the FTC action, Aldabe says that he was deprived of access to "his" funds held in the Palma Efuus Ltd. account with AIBL for more than 12 months, and that he ultimately suffered financial losses of thirty-one percent of the value of "his" assets.[2] *Id.* ¶ 53. The loss of access to the funds, he says, caused him stress, since the funds were intended to pay for his son's

---

[2] To be perfectly clear, Aldabe is not alleging that he did not get anything after AIBL's liquidation, but rather that he only recovered sixty-nine percent of his funds. *Id.* ¶ 53. In a declaration attached to the Belize Defendants' Motion to Dismiss, AIBL Liquidator (and Defendant here) Julian Murillo stated that Palma Efuus Ltd. ultimately recovered $49,584.99, or 68.47% of its allowed claim, thus, it appears Aldabe is asserting that his interest in the Palma Efuus Ltd. AIBL account was about 100%. *See* ECF No. 32-3 ¶ 16. Indeed, Aldabe alleges that Palma Efuus Ltd.'s account at AIBL was opened for the sole purpose of "servicing" Aldabe's carbon credit sales. Compl. ¶ 31.

senior year of college. *Id.* ¶ 45. Aldabe alleges that the stress resulted in numerous physical and mental health harms, including "premature aging," "thickening of the heart walls," and diarrhea. *Id.* at 54. He states that he contacted the FTC to inform them of the impact the actions against AIBL was having upon him, namely emotional distress and physical and financial harm. *Id.* ¶ 42.

Aldabe seeks $1.2 million to cover medical bills (for four psychotherapy visits a week over twenty years to "recover from the intentional emotional distress inflicted on him"); $5 million in non-economic damages; punitive damages; and interest. He does not apparently seek economic damages (nor would it affect the Court's decision if he does).

### c. Procedural History

Aldabe filed his Complaint in this Court on March 30, 2021. ECF No. 1. Over the next three months, he filed multiple motions seeking to recuse the undersigned Judge from deciding the case on the ground that this Judge was a "direct participant of the acts complained of... and therefore has a stake in the outcome of the case." ECF Nos. 4; 7, 9. All those motions were denied. ECF Nos. 5, 8, 12.

On May 3, 2021, the United States filed a motion to substitute the United States for the individual FTC Defendants. ECF No. 6. Aldabe responded with a cross motion, seeking a stay of the motion to substitute pending limited discovery regarding the issue of scope of employment. ECF No. 11. After the FTC replied, Aldabe moved for leave to file a surreply. ECF No. 18.

Aldabe then moved for default judgment against Defendant Magid, which the Court denied. ECF Nos. 14, 17.

On July 6, 2021, Defendant Magid filed a motion to dismiss. ECF No. 20. Aldabe responded, and Magid replied. ECF Nos. 22, 24. Aldabe again sought leave to file a surreply. ECF No. 25.

On September 17, 2021, the Belize Defendants filed a Motion to Dismiss, ECF No. 32, which Aldabe opposed, ECF No. 34. Defendants did not reply.

The Court addresses the outstanding motions.

### III. Discussion

#### a.   *Motion to Substitute*

In its Motion to Substitute, ECF No. 6, the United States seeks to substitute itself for the individual FTC Defendants.[3] In the Motion, the United States cites the Federal Tort Claims Act, which provides that the exclusive remedy for a tort committed by employees of the United States Government acting within their scope of employment is a suit against "the United States." The FTCA does not provide for any remedy against federal employees in their individual names for torts they may commit while acting in the scope of their employment. *See* 28 U.S.C. § 2679(b)(1) (noting that FTCA provides the exclusive remedy for alleged torts committed by federal employees acting in the scope of their employment); 28 U.S.C. § 2674 (only permitting FTCA suit against the "United States" as a defendant). Under the FTCA, the United States may move to substitute itself as the defendant where the employee was acting within their scope of employment. *See, e.g., Ross v. Bryan*, 309 F.3d 830, 834 (4th Cir. 2002) (reviewing District Court order on defendant's motion to substitute the United States as party defendant). By allowing substitution of the United States, the FTCA "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007); *United States v. Smith*, 499 U.S. 160, 163 (1991).

---

[3] Johnathan Cohen, Joseph J. Simons, Rebecca Kelly Slaughter, Noah Joshua Phillips, Rohit Chopra, Christine S. Wilson, Benjamin J. Theisman, Amanda B. Kostner, and Khouryanna DiPrima.

Scope of employment is determined based on the law of the state in which the conduct occurred. *See Barker v. Mokhtare*, 318 Fed. Appx. 185, *1 (4th Cir. 2009), *citing Gutierrez de Martinez v. Drug Enf't. Admin.*, 111 F.3d 1148, 1156 n. 6 (4th Cir. 1997). The parties here appear to agree that the laws of Maryland apply,[4] which provides that scope of employment turns on whether the employee's acts "were in furtherance of the employer's business and were 'authorized' by the employer." *Sawyer v. Humphries*, 587 A.2d 467, 470 (Md. 1991). "Authorized" does not by mean actually sanctioned, but rather "incident to the performance of the duties." *Id.* at 470-71. "Courts assess whether an employee's conduct furthers his master's business under the totality of the circumstances." *Khatami v. Compton*, 844 F.Supp.2d 654, 659 (D. Md. Feb. 13, 2012), *citing id.* at 471–72. The following factors bear on this assessment: "(1) whether the employer should expect or foresee the conduct; (2) whether the conduct is similar to the conduct the employer authorizes; and (3) whether the conduct is close in time and space to the employee's job duties." *Id., citing Sawyer, supra.*

Certification from an acting U.S. Attorney may serve to confirm that the federal employees were acting within their scope of employment for the purposes of substitution. *See* 28 U.S.C. § 2679(d)(1) (for the purposes of substitution, the scope of employment prong may be met by certification by the Attorney General that a federal employee was acting within the scope of employment at the time of the incident out of which a state law claim arises); 28 C.F.R. § 15.3 (delegating certification authority to the United States Attorneys). Once the Attorney General or U.S. Attorney or Assistant U.S. Attorney (AUSA) has made this certification, the "United States

---

[4] Plaintiff argues that Maryland law applies. *See* ECF No. 10-1 at 15. Defendants contend that either Maryland law or District of Columbia law might apply, given that the underlying litigation occurred in Maryland, and the FTC Defendants' duty station was Washington, D.C., but they state that the law of both jurisdictions is substantially the same with respect to scope of employment, and cite Maryland law in support of their argument. In other words, they submit the same result would be reached under either jurisdiction's law. *See* Def. Reply, ECF No. 11 at 6, n. 2.

shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2). The burden is on the party opposing substitution to disprove scope of employment where there is an AUSA certification. *See Ross v. Bryan*, 309 F.3d 830 (4th Cir. 2002); *Gutierrez de Martinez*, 111 F.3d at 1155 (a "scope-of-employment certification is prima facie evidence that the defendant federal employees acted within the scope of his employment, thereby placing the burden on the plaintiff to prove otherwise."). "[T]he plaintiff's submission must be specific evidence or the forecast of specific evidence that contradicts the Attorney General's [or U.S. Attorney or AUSA's] certification decision, not mere conclusory allegations and speculation." *Gutierrez de Martinez*, 111 F.3d at 1155. "District courts must not authorize discovery on the scope of employment question unless the plaintiff carries this burden." *Khatami v. Compton*, 844 F.Supp.2d 654, 659 (D. Md. Feb. 13, 2012), *citing id.*

The United States contends that substitution is appropriate here because (1) Aldabe has brought various tort claims against the FTC Defendants including, negligent misrepresentation (Counts 1, 2, 3, 14, 15, 16), negligent personal injury (Counts 4, 5, 6, 7, 8, 9, 10, 13), and intentional infliction of emotional distress (Count 17); and (2) the employees were acting in their scope of employment. The United States attaches to its Motion a certification by Acting United States Attorney for the District of Maryland (Jonathan Lenzer, Esquire), which certifies that the FTC Defendants were acting within the scope of their employment at the time of the incidents alleged in the Complaint. *See* 28 U.S.C. § 2679(d)(1); 28 C.F.R. § 15.3. Under these circumstances, the United States argues, to the extent any claim can be brought, the FTCA provides that the exclusive remedy is a suit against the United States of America, and it should therefore be substituted for the FTC Defendants.

Aldabe makes two main arguments against substitution, and has filed a cross motion to stay the Motion to Substitute with a request that the Court permit discovery before ruling on the Motion. As to the stay, Aldabe asserts that there are questions as to whether 1) the FTC acted outside its jurisdiction as determined by Congress; 2) "whether the US Government can unreasonably seize plaintiff's property"; 3) whether the FTC defendants committed fraud on the court by pursuing a claim against AIBL "when they knew that they were precluded by Congress from doing so" and 4) whether the FTC defendants committed fraud on the court by pursuing a settlement that made depositors and their principals pay for the damages over which they had no part, act or control. ECF No. 10. The Court need not delve any further into this issue: clearly, these are questions of law that do not require further discovery. *See Gutierrez de Martinez*, 111 F.3d at 1155 (limited discovery should be ordered only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue). Aldabe has offered no forecast of evidence as might justify discovery and realistically there is none. *See Gutierrez de Martinez*, 111 F.3d at 1155. Aldabe's request to stay a decision on the Motion to Substitute is therefore **DENIED**.

Turning to the substance of the Motion to Substitute,[5] Aldabe makes two main arguments as to why the Motion should be denied. First, he argues he has brought constitutional claims, which preclude substitution, citing 28 U.S.C. § 2679(b)(2) (exclusiveness of remedy against

---

[5] Aldabe filed a Motion for Leave to File a Surreply with respect to the Motion to Substitute, ECF No. 18. It is within the sound discretion of district courts to grant leave to file a surreply brief. *See FDIC v. Cashion*, 720 F.3d 169, 176 (4th Cir. 2013). Where "the arguments made by Defendants in their reply brief are merely responses to new arguments made by Plaintiffs in their response," a sur-reply is not appropriate. *EEOC v. Freeman*, 961 F. Supp.2d 783, 801 (D. Md. 2013); *Aguilar v. LR Coin Laudromat*, 2012 WL 1569552, at *2–3 (D. Md. May 2, 2012) (denying motion to strike or to allow sur-reply where plaintiffs' opposition introduced arguments about defendants' sales volume, and defendants' reply included an affidavit and tax return not attached to the original motion, but used to address the arguments in the plaintiffs' opposition). The United States argues that Aldabe should not be permitted to file a surreply because he has failed to show there were new arguments in the Reply. However, given that courts are to construe *pro se* submissions liberally, *see Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and because the Court finds no prejudice to Defendants, it **GRANTS** the Motion, ECF No. 18, and will consider Aldabe's surreply, such as it is, in its analysis and disposition of the Motion to Dismiss.

United States "does not extend or apply to a civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States"). Aldabe points to Count 9: "The FTC Defendants; Negligent Personal Injury; Seizure of private property," in which he cites the Constitution and Bill of Rights and makes a claim for unreasonable seizure of his property as a result of the settlement. He states that the burden is on the FTC to show he has not raised a constitutional violation. He also contends that he has alleged a constitutional violation in arguing the FTC acted outside the powers Congress gave it in acting against AIBL, thus violating the constitutional system of checks and balances.

Second, Aldabe argues that the Court should make its own determination as to scope of employment and not rely on the Lenzner declaration. Moreover, he argues that the FTC defendants were not acting in their scope of employment because, he submits, the entire FTC action against AIBL was illegal and the FTC committed fraud on the Court in omitting to explain how the AIBL settlement would impact depositors. Specifically, Aldable argues that the FTC does not have authority over banks, citing 15 U.S.C. § 45 (a)(2), which empowers the FTC to prevent unfair competition over persons, corporations, etc., "except banks" (the "bank exception"). AIBL, he argues, is a bank. Additionally, he argues that the FTC's business is not to cause bank runs or "harm consumers," as Defendants did here when they misrepresented to the Court that the FTC was seeking damages from the bank, when they knew damages would ultimately be paid by depositors since they knew the settlement of $23 million exceeded the bank's equity of $11 million. Defendants were not employed to commit fraud on the Court, his argument goes: therefore, the settlement was outside the scope of employment. Aldabe also argues that the FTC was required to exhaust administrative proceedings, *citing AMG Capital Management, LLC v. FTC*, 593 U.S.

(2021).[6] Finally, for the first time in his opposition to the motions to dismiss he makes additional claims.[7]

The Court concludes that substitution by the United States for the FTC Defendants is proper. First, Aldabe's claims are, in fact, tort claims. Count 9 alleges negligent personal injury through the seizure of private property in violation of a "duty of care" under the constitution. Count 17 alleges intentional infliction of emotional distress because Defendants disregarded constitutional checks and breached Plaintiff's constitutional right to not have his property seized. References to the constitution do not transform what are clearly ordinary common law tort claims into constitutional claims.

Further, Aldabe has not presented or forecast evidence that might show the conduct of the FTC Defendants was not within the scope of employment, *i.e.*, outside the type of work they were employed to perform, outside the authorized time or space, or purely personal in nature. *Doe v. Merron*, 929 F.3d 153, 165 (4th Cir. 2019). Instead, his argument relies on the patently incorrect assertion that the FTC never had jurisdiction over AIBL under 15 U.S.C. § 45 (a)(2), and that the FTC tricked the Court into approving of the settlement. He contends that Defendants could not have been acting in their scope of employment, because their actions were, in his view, illegal.

Aldabe misapprehends the law. His argument regarding the "bank exception" and whether the FTC had jurisdiction over AIBL is well outside the scope of a motion to substitute.

---

[6] Aldabe also argues that the motion should be dismissed because the AUSA who filed the Motion to Substitute did so without first entering an appearance. There was no need for the AUSA to file a separate notice of appearance in addition to the motion to substitution. *See* U.S. Dist. Ct. for the Dist. of Md. ECF Policies and Procedure Manual (v 6.1 Oct. 2020) at III.B.4.

[7] Aldabe argues that FTC jumped the queue of creditors in its settlement with AIBL, in violation of common law principles that all creditors must be treated equally, and further that the FTC violated the Domestic Banks and Financial Institutions Act, 2012 § 116, which, he asserts, provides that depositors like Plaintiff are to be paid before a third party, such as the FTC. The Court does not address claims that are not properly before it in the Complaint. *See* Fed. R. Civ. Pro. 15 ("a party may amend its pleading only with the opposing party's written consent or the court's leave"). In any event, the arguments are frivolous. No leave to amend will be granted.

Nonetheless, the Court addresses the argument which Aldabe makes, because he also makes it in response to the other two motions presently before the Court. The FTC Act, which, in addition to the Telemarketing Sales Rules (TSR), 16 CFR § 310.3, served as the basis for the FTC's action in Sanctuary Belize, provides FTC jurisdiction over certain entities with the exception of a specifically-defined class of banks – the "bank exception." "Banks" exempt from FTC oversight are defined as only those institutions within the federal bank regulatory regimes, *i.e.*, those otherwise subject to extensive regulations. *See* 15 U.S.C. § 57a(f)(2). The following institutions fall under the exception:

> (1) "national banks and Federal branches and Federal agencies of foreign banks," (2) certain Federal Reserve System members, certain commercial lending companies, and bank holding companies; and (3) FDIC-insured banks and State branches of foreign banks.

*See* 15 U.S.C. § 57a(f)(2).

AIBL, which had no branches or offices – Federal or State – in the United States,[8] and was not recognized by FDIC, Federal Reserve, or Office of the Comptroller of the Currency, did not meet the criteria for a "bank" so as to be excepted from the FTC Act. During the underlying Sanctuary Belize litigation AIBL itself did not dispute that the bank exception was inapplicable. Though AIBL was surely a "bank" in the colloquial sense and was referred to as such in Court documents, nonetheless it did not and does not qualify under the exemption under the FTC statute. There was no impropriety in the FTC employees taking action to proceed with the case against AIBL culminating in the Settlement Agreement. Moreover, Plaintiff's argument on this point essentially boils down to his contention that if the FTC did not have jurisdiction over AIBL and

---

[8] Aldabe argues, in his Surreply, ECF No. 18, that AIBL has a branch in California, based on the sole fact that AIBL has an IP address that, Aldabe proffers, is tied to a location in California. An IP address does not, in fact, mean that a business has an office, let alone a bank branch, at the particular IP address location. *See United States v. Matish*, 193 F.Supp.3d 585, 617 (E.D. Va. June 23, 2016) (explaining how IP address not necessarily tied to a particular machine; certain technology can permit redirecting of IP addresses). The Court finds no evidence that in fact there is or was a branch of AIBL in the United States.

was acting unconstitutionally, then the FTC defendants were, *ipso facto*, acting outside the scope

of employment. In *Doe v. Meron*, PX-17-812, 2018 WL 3619538, *6 (D. Md. July 30, 2018), aff'd

929 F.3d 153 (4th Cir. 2019), Judge Xinis considered a similar argument where the plaintiffs in

that case "broadly assert[ed] that '[v]iolating the law or the U.S. Constitution can never be within

the scope of federal employ." Judge Xinis, joining innumerable other courts, rejected this

argument, explaining that, "if Plaintiffs were correct, then no employee could ever be held liable

as a state actor for wrongful conduct because the conduct, by definition, would fall outside the

scope of his employment." *Id.* Aldabe advances the same misguided argument here. *Cf. Gilbert

v. U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 306 F. Supp. 3d 776, 784 (D. Md.

2018) ("The fact that the employee's alleged acts were wrongful is not, alone, sufficient to show

that they were conducted outside the scope of employment, because if courts were to 'separate the

activity that constitutes the wrong from its surrounding context an otherwise proper exercise of

authority—[they] would effectively emasculate the immunity defense.'").

In sum, Aldabe raises solely tort claims, and has failed to rebut the Government's

declaration that the FTC employees acted within their scope of employment. The requirements for

substitution under the FTCA are met and the Motion of the United States, ECF No. 6, is

**GRANTED.**

### b.  *Motion to Dismiss by Belize Defendants*

The Court turns to the Motion by the Belize Defendants[9] to dismiss the claims against them

under Fed. R. Civ. Pro. 12(b) for lack of personal jurisdiction, lack of subject matter jurisdiction,

---

[9] The Government of Belize, the Central Bank of Belize, A. Joy Grant, Julian Murillo, and Atlantic International Bank LTD. (AIBL).

improper venue, and failure to state a claim upon which relief can be granted.[10] The Defendants ask for dismissal with prejudice and without leave to amend. *See* ECF No. 32.

As for failure to state a claim upon which relief may be granted, Fed. R. Civ. Pro. 12(b)(6), the question is whether the complaint has pleaded sufficient factual allegations that, taken as a whole, state a facially plausible claim to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Moise v. Howard Cnty. Detention Center*, No. RDB-18-1355, 2019 WL 454101, at *2 (D. Md. Feb. 4, 2019). The Court finds Aldabe has not. In evaluating a motion to dismiss, the "Court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir.2009) (citations omitted). However, deference is not accorded to labels and legal conclusions, formulaic recitations of the elements of a cause of action, and bare assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Aldabe has sued the Belize Defendants for: (1) "Negligent Misrepresentation Involving Risk of Physical Harm; FTC makes plaintiff pay for [AIBL]'s alleged acts" (Count 3); (2) "Negligent Personal Injury; Failure to uphold the laws of Belize" (Count 10); (3) "Negligent Personal Injury; Selling loan portfolios well below market value to [AIBL]'s parent company in order to make depositors and their beneficiaries fully pay for the $23mm settlement" (Count 11); (4) "Negligent Misrepresentation Involving Risk of Physical Harm; FTC makes plaintiff pay for [AIBL]'s alleged acts" (Count 16); (5) "Intentional infliction of emotional distress" (Count 18); and (6) "Punitive damages" (Count 19). None of these purported causes of action passes muster.

---

[10] The Court will pass on the issues of subject matter jurisdiction, personal jurisdiction, and venue because the bottom line is that Aldabe fails to state an actionable claim.

To state a claim for negligent misrepresentation under Maryland law,[11] a plaintiff must allege five elements: (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence. *See Newton v. Kenific Group*, 62 F.Supp.3d 439, 442 (D. Md. Oct. 15, 2014), *citing Weisman v. Connors*, 312 Md. 428, 540 A.2d 783, 791 (1988).

To state a claim for negligent personal injury under Maryland law, the "plaintiff must prove: (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Rybas v. Riverview Hotel Corp.*, 21 F. Supp.3d 548, 560 (D. Md. 2014), *quoting 100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212–13, 60 A.3d 1, 10 (2013) (internal citation and quotations omitted).

To establish a claim of intentional infliction of emotional distress, a Plaintiff must prove (1) conduct that is intentional or reckless, (2) conduct that is extreme and outrageous, (3) a causal

---

[11] A federal court operating under diversity jurisdiction must apply the law of the state in which the court is located, including the forum state's choice of law rules. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Regarding tort claims, Maryland applies the law of the state where the alleged harm occurred ("lex loci delicti"). *See, e.g., Proctor v. Washington Metropolitan Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 625 (2007); *Philip Morris, Inc. v. Angeletti*, 358 Md. 689, 744 (2000).

Aldabe appears to advance that Maryland law should apply, *see* ECF No. 34 at 12. Defendants do not address which law should apply, but the Court determines because the alleged misrepresentation and infliction of injury through the entry of the settlement agreement took place in Maryland, the substantive tort law of Maryland governs Plaintiffs' claims. *See Hauch v. Connor*, 295 Md. 120, 123–24, 453 A.2d 1207, 1209 (1983); *PPM America, Inc. v. Marriott Corp.*, 820 F. Supp. 970, 979 (D. Md. Apr. 22, 1993) (applying Maryland law to analyze whether plaintiff had stated a claim for negligent misrepresentation).

connection between the wrongful conduct and the emotional distress, and (4) severe emotional distress. *Batson v. Shiflett*, 325 Md. 684, 733, 602 A.2d 1191, 1216 (1992). In Maryland, such a claim exists only where the defendant "desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct; or where the defendant acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow." *Haines v. Vogel*, 250 Md. App. 209, 229, 249 A.3d 151, 163 (2021) (citation omitted).

Finally, in his complaint, Aldabe sued for punitive damages. Under Maryland law, a plaintiff must prove that a defendant had actual malice in order to obtain punitive damages based on intentional and non-intentional torts. *Bowden v. Caldor*, 350 Md. 4, 23, 710 A.2d 267, 276 (1998) (internal citations omitted). Actual malice consists of "conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud." *Id.* Punitive damages will not be granted "based on any theory of 'implied malice,' either in the sense of gross negligence or in the sense of inferring malice from an element of the tort." *Id., citing Montgomery Ward v. Wilson*, 339 Md. 701, 728-725 n. 5, 734-736, 664 A.2d 916, 929-30 n.5, 932-33 (1995).

The Belize Defendants argue that none of Aldabe's claims against them can survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), as the Complaint fails to allege any wrongful acts by those Defendants in connection with the FTC settlement, any duty owed by Defendants to Aldabe or any intent on their part to harm Aldabe.

Notably, Aldabe's claims rely on his contention of purported misconduct with respect to the asset freeze and settlement agreement between AIBL and the FTC. He contends that the Belize Defendants failed to explain to the Court in *Sanctuary Belize* what the impact of its acts might be, including the consequences that might result from the freezing of Aldabe's assets held in the

account of his wife's company, Palma Efuus Ltd., at AIBL and the purported eventual loss to Aldabe of thirty-one percent of "his" funds following AIBL's liquidation. In Aldabe's view, the settlement resulted in innocent depositors, and indirectly himself, paying for the settlement. This in turn led to Aldabe's claims of emotional distress and detrimental physical and mental health damages to fund twenty years of four-times-weekly therapy to recover, plus punitive damages.

As already explained, however, there was no impropriety in the settlement executed between AIBL and the FTC. The fact that the asset freeze may have been followed by something like a run on the bank and its eventual liquidation does not in any way support Aldabe's totally unlinked claims for damages. Most fatally to Aldabe is that he does not even plead that <u>he</u> was an account holder at AIBL. What he pleads is that his <u>wife's company</u>, Palma Efuus Ltd., had an account with AIBL that, on Aldabe's say-so alone, owed him money and that that fact supports his claims. Aldabe relies on a series of events that are in no way legally conjoined; that the FTC Defendants committed negligence and misrepresentation in pursuing the asset freeze and settlement; that as a result of the asset freeze and settlement, Palma Efuus Ltd. lost access to its funds for a year and ultimately recovered approximately seventy percent of the deposits held, which assertedly were owed to Aldabe; and that all this caused Aldabe emotional distress and physical ailments. This house-of-cards argument falls of its own weight. To the extent Palma Efuus Ltd. may have been harmed by the liquidation process, it was for Palma Efuus Ltd. to challenge that result and to do so in Belize, which Defendants note, Palma Efuus Ltd. appears in fact to have done. *See* Def. Br., ECF 32-1, Ex. 6 (Palma Efuus Ltd. claim in Belize liquidation proceeding), Ex. 10 (final distribution). *See also In re Atl. Int'l Bank Ltd.*, No. 19-bk-1286, ECF No. 86 (S.D. Fl. Sept. 19, 2019) ("Bankruptcy litigation") (order recognizing the Belize liquidation proceeding as foreign main proceeding).

Summing up, the Belize Defendants' Motion to Dismiss is **GRANTED**.[12] Additionally, having found that no common law cause of action lies against the Belize Defendants, Count 19 for punitive damages is also **DISMISSED** as to these Defendants.

Given that Aldabe comes nowhere close to stating any cognizable course of action, the Court need not analyze the other bases Defendants put forth for dismissal, *see note 10 supra*, namely, lack of personal jurisdiction, lack of subject matter jurisdiction on the basis of sovereign immunity, and *forum nonconveniens*, though on brief review the Court notes that these arguments likewise would appear to have merit.

### c. Motion to Dismiss of Defendant Magid

The Court considers Defendant Magid's Motion to Dismiss, ECF No. 20.[13] To remind: Magid was part of the team of attorneys that represented ABIL in the action with the FTC.

Aldabe brings four claims against Magid: (1) "negligent misrepresentation" in connection with statements made in a Stipulated Order signed by the FTC and the liquidator of AIBL (Count 3); (2) negligent personal injury/breach of "a duty of care to defend [AIBL]" (Count 12); (3) negligent misrepresentation involving risk of physical harm by making Plaintiff pay for AIBL's alleged acts (Count 16); and (4) intentional infliction of emotional distress by allowing AIBL's

---

[12] The Court notes this is Plaintiff's third time to bring his grievances before a Court in the United States. He brought similar, though not identical, claims in Massachusetts State Court in 2020, which were dismissed for failure to state a claim. *See Aldabe v. Atlantic International Bank Limited & Others*, No. 20-00963 (Mass. Dist. Ct. Mar. 8, 2021) (available at ECF No. 32, Ex. 21). He also unsuccessfully challenged the certification of the Belize litigation with respect to the bankruptcy proceeding and sought restitution of the money AIBL paid to the FTC in its settlement. *See Bankruptcy litigation, supra*, ECF No. 122 (available at ECF No. 32, Ex. 20) ("Mr. Aldabe should address his grievance to the Belizean court adjudicating the Debtor's main bankruptcy case. There is neither cause nor jurisdiction for this Court to oversee Mr. Aldabe's prosecution of a claim that should be filed an adjudicated in Belize."). The Court urges Plaintiff to take careful note that it is not dismissing his claims on technical grounds, but on his substantive lack of any cognizable cause of action. Plaintiff is expressly cautioned that, should he try to raise variations of his concerns in further AIBL-related lawsuits, other courts may well be inclined to impose appropriate sanctions.

[13] Aldabe moved for leave to file a surreply with respect to this Motion. *See* ECF No. 25. The Court **GRANTS** the Motion for Leave to File a Surreply (ECF No. 25) and considers Aldabe's arguments made in the Surreply.

liquidator to enter into a settlement agreement with the FTC (Count 18). Magid moves to dismiss these claims based on Aldabe's failure to state an actionable claim.

The Court has already explained, *supra*, how Count 3 (negligent misrepresentation, plaintiff pays for AIBL acts), Count 16 (same), and Count 18 (intentional infliction of emotional distress) fail as a matter of law to assert viable claims against the Belize Defendants. For the same reasons as articulated with respect to the Belize Defendants, these claims also fail as to Magid and are **DISMISSED.**

The remaining claim against Magid is Count 12 for negligent personal injury, *i.e.*, failure to properly defend AIBL, which appears to be an effort to state a legal malpractice claim. Magid argues that Aldabe fails to state a legal malpractice claim because: (1) Aldabe was never a client of his and never claims to have been one; therefore, he lacks standing to pursue an attorney malpractice claim; and (2) Aldabe fails to establish, as a non-client, that Magid nonetheless owed him a duty and breached that duty. Aldabe contends that where fraud is involved, as he alleges is the case here, an affected third-party, has the right to sue.

To bring a legal malpractice claim, a plaintiff must establish an attorney-client relationship to demonstrate a duty of care owed to the plaintiff. *See Pinner v. Pinner*, 240 Md. App. 90, 118, 201 A.3d 26, 44 (2019); *see also Ferguson v. Cramer*, 116 Md. App. 99, 106, 695 A.2d 603, 606 (1997) ("Maryland adheres to the strict privity rule in attorney malpractice cases."). To establish a duty owed by an attorney to a nonclient, the nonclient "must allege and prove that the intent of the client to benefit the nonclient was a direct purpose of the transaction or relationship." *Flaherty v. Weinberg*, 303 Md. 116, 130-131, 492 A.2d 618, 625 (1985). Incidental benefit does not suffice. *Id.* at n. 6.

Aldabe's Complaint does not (and cannot fairly) allege that he was ever a client of Magid who was, in fact, an attorney for AIBL in the underlying Sanctuary Belize litigation. The Complaint also does not (and cannot fairly) allege that AIBL intended that the "direct purpose" of Magid's defense of AIBL in the FTC litigation was to benefit Aldabe. Aldabe, after all, had no account with or relationship with AIBL at all. Instead, assuming what he posits is taken as true, Aldabe at most had a contractual relationship with his wife's firm Palma Efuus Ltd., which in turn was one of AIBL's presumably multiple depositors.

Moreover, the basis of Aldabe's attempted malpractice claim is Magid's alleged failure to raise the bank exception in 15 U.S.C. § 45(a)(2) as a defense to the FTC's claims. As the Court has already explained, that statutory provision does not apply to AIBL. *See* 15 U.S.C. § 57a(f)(2).[14] Aldabe, then, has failed to assert a plausible claim that AIBL's defense team, including Magid, breached a duty of care to anyone, let alone as to him.

To the extent that Count 12 also seeks to state claim for emotional distress damages arising from the alleged legal malpractice,[15] it also fails as a matter of law. Emotional distress damages are not available in legal malpractice cases arising from representation in commercial matters. *See, e.g., Schafer v. Young*, 2004 U.S. Dist. LEXIS 756, 2004 WL 162961 (D. Md. Jan. 22, 2004), *citing Dobbins v. Washington Suburban Sanitary Comm.*, 338 Md. 341, 658 A.2d 675 (1995).

---

[14] To repeat, the exception applies only to: "(A) national banks and Federal branches and Federal agencies of foreign banks; (B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act [12 U.S.C. 601 et seq., 611 et seq.]; and (C) banks insured by the Federal Deposit Insurance Corporation (other than banks referred to in subparagraph (A) or (B)) and insured State branches of foreign banks." *See* 15 U.S.C. § 57a(f)(2).

[15] Count 12 alleges damages "as a result of ... dealing with an extremely emotional situation." Compl. ¶ 125.

Summing up, as an alleged third-party beneficiary of funds in a corporation's account at AIBL, Aldabe had no relationship with Magid at all, let alone an attorney-client relationship. Aldabe was owed no duty as an incidental beneficiary of the settlement agreement that he alleges led to the run on the bank which caused Palma Efuus Ltd. to recover only a portion of its deposits it allegedly owed him. Aldabe has not (and cannot) in any way show that Magid committed malpractice. The Court **GRANTS** Defendant Magid's Motion to Dismiss With Prejudice all Counts against him, namely Counts 3, 12, 16, 18, and 19.

## VI.

### Conclusion

For the foregoing reasons, the Court **GRANTS** the Motion to Substitute by the United States (ECF No. 6), and **GRANTS** Plaintiff's Motion for Leave to File a Surreply with respect to this Motion (ECF No. 18). The FTC Defendants are hereby **SUBSTITUTED** by the United States.

The Court **GRANTS** the Belize Defendants' Motion to Dismiss (ECF No. 32); Counts 3, 9, 11, 16, 18, and 19, which are **DISMISSED WITH PREJUDICE** as to the Belize Defendants.

The Court **GRANTS** Defendant Magid's Motion to Dismiss (ECF No. 20), as well as and **GRANTS** Plaintiff's Motion for Leave to File a Surreply with respect to this Motion (ECF No. 25); Counts 3, 12, 16, 18, and 19 are **DISMISSED WITH PREJUDICE** as to Defendant Magid.

An Order implementing the Court's decisions herein will be **ENTERED**. Since no other motions remain as to the Belize Defendants and Defendant Magid that necessitate going forward with this case as to them, a second Final Order of Judgment in favor of those Defendants and against Plaintiff will be **ENTERED** and the Clerk will be directed to **CLOSE** the case as to those

Defendants. The case remains open as to Defendant United States which may, within 20 days, file its own Motion to Dismiss.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

March 30, 2022