IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FERMIN ALDABE, | * |
| Plaintiff, | * |
| v. | *   Civil No. PJM 21-cv-803 |
| UNITED STATES OF AMERICA, *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

On March 30, 2021, *pro se* Plaintiff Fermin Aldabe ("Aldabe") filed this action against fifteen Defendants,[1] alleging that a settlement between the Federal Trade Commission ("FTC") and Atlantic International Bank, Ltd. ("AIBL") of Belize, caused him to lose a substantial portion of his assets. Defendants can be divided into three groups: (1) nine employees of the FTC (collectively, the "FTC Defendants"); (2) AIBL, Julian Murillo (AIBL liquidator), the Central Bank of Belize, Joy Grant (the former Governor of the Central Bank of Belize), and the Government of Belize (collectively, the "Belizean Defendants"); and (3) Creighton Magid (an American attorney who represented AIBL in the Sanctuary Belize litigation).

---

[1] The Court notes this is Aldabe's third attempt to bring his grievances before a Court in the United States. He brought similar, though not identical, claims in Massachusetts State Court in 2020, which were dismissed. *See Aldabe v. Atlantic International Bank Limited & Others*, No. 20-00963 (Mass. Dist. Ct. Mar. 8, 2021) (available at ECF No. 32, Ex. 21). He also unsuccessfully challenged the certification of the Belize litigation with respect to the bankruptcy proceeding and sought restitution of the money AIBL paid to the FTC in its settlement. *See In re: Atl. Int'l Bank Ltd.*, No. 19-16286-BKR-RAM (Bankr. S.D. Fla. Nov. 10, 2020) (available at ECF No. 32, Ex. 20) ("Mr. Aldabe should address his grievances to the Belizean court adjudicating the Debtor's main bankruptcy case. There is neither cause nor jurisdiction for this Court to oversee Mr. Aldabe's prosecution of a claim that should be filed an adjudicated in Belize.").

In a Memorandum Opinion dated March 30, 2022, the Court granted the Motion to Dismiss of the Belizean Defendants (ECF No. 32) and the Motion to Dismiss by Defendant Magid (ECF No. 20). The Court based its decision on a number of grounds, by passing threshold issues of jurisdiction and standing. Aldabe appealed to the Fourth Circuit, which held that the Court should have addressed the jurisdictional and standing issues before considering the merits of Aldabe's claims. The matter is now back before this Court for reconsideration.

For the reasons that follow, the Court **GRANTS** both Motions to Dismiss.

## I. Factual and Procedural Background

The Court has recited the facts of the case in full in its Memorandum Opinion dated March 30, 2022. ECF No. 35. It incorporates that factual background by reference here but repeats facts pertinent to the Belizean Defendants' and Magid's Motions to Dismiss.

In 2018, the FTC initiated suit against numerous defendants for allegedly perpetrating a large-scale land sales scam in Belize. The defendants in that case (AIBL among them) were said to be part of a common enterprise known as "Sanctuary Belize." *See* Court's Opinion of August 28, 2020, *In re Sanctuary Belize Litigation*, PJM-18-3309, ECF No. 1020 (D. Md. Aug. 28, 2020). The FTC alleged that the defendants had defrauded American consumers by selling them lots at the Sanctuary Belize property, advertising them as part of a resort which would have top-shelf amenities and offer certain investment gains, when in reality the development, as advertised, was essentially a sham.

As part of the case, in November 2018, the Court entered several orders freezing the assets of AIBL. *See In re Sanctuary Belize*, ECF Nos. 13, 14, 34. On April 12, 2019, the Central Bank of Belize revoked AIBL's license to operate and appointed a liquidator, Julian Murillo, to take care of its affairs. *See id.,* ECF No. 607 ¶ 4. In June 2019, the FTC and AIBL entered into a Settlement

Agreement, approved by the Court, whereby certain AIBL assets would transfer to the Receiver who had been appointed to manage restitution to victims of the Sanctuary Belize scheme. *See id.*, ECF No. 607. Meanwhile, liquidation proceedings against AIBL moved forward in Belize. *See* ECF No. 32-1 at 3; *In re Atl. Int'l Bank Ltd.*, No. 19-bk-1286, ECF No. 86 (Bankr. S.D. Fl. Sept. 19, 2019) (recognizing the Belize liquidation proceeding).

According to his Complaint, Aldabe headed a carbon offset project in Belize from 2011 to 2016. Compl. ¶¶ 27–28. Around early 2016, Aldabe's wife formed a company known as "Palma Efuus Ltd.," in Belize, which opened a bank account at AIBL. *Id.* ¶ 29. Aldabe states that it was he who ran the day-to-day operations of Palma Efuus Ltd. and contracted with himself to produce carbon credits which Palma Efuus Ltd. would broker and sell. *Id.* ¶ 21. Proceeds from the sales were allegedly deposited in the AIBL account. *Id.* ¶ 32.

Aldabe says that when the Court froze AIBL's assets, it did so in an amount greater than AIBL's assets and equities. This, Aldabe alleges, led to a run on the bank. *Id.* ¶ 37. The Government of Belize thereafter revoked AIBL's banking charter and placed AIBL in liquidation. *Id.* Thereafter the Government-appointed liquidator of AIBL negotiated a settlement of the litigation with the FTC. *Id.* at ¶¶ 40, 48. Aldabe alleges that this settlement — in the amount of some $23 million — resulted in depositors and their beneficiaries, such as Aldabe, having to personally shoulder the cost. *Id.* ¶ 48.

As a result of the FTC action, Aldabe says he was deprived of access to "his" funds held in the Palma Efuus Ltd. account with AIBL for more than twelve months, and that he ultimately suffered financial losses of thirty-one percent of the value of "his" assets.[2] *Id.* ¶ 53.

---

[2] To remind, in a declaration attached to the Belize Defendants' Motion to Dismiss, AIBL Liquidator (and Defendant here) Julian Murillo stated that Palma Efuus Ltd. ultimately recovered $49,584.99, or 68.47% of its allowed claim. *See* ECF No. 32-3 ¶ 16; *see also* ECF No. 35 at n.22.

On May 3, 2021, the United States filed a Motion to Substitute. ECF No. 6. On July 6, 2021, Defendant Magid filed a Motion to Dismiss, ECF No. 20, and soon after the Belizean Defendants did the same, ECF No. 32. On March 30, 2022, the Court granted the United States' Motion to Substitute, then dismissed the claims against the United States based on sovereign immunity. *See* ECF No. 35. It also granted the Belizean Defendants' and Magid's Motions to Dismiss. *See id.*

Aldabe appealed, and on May 2, 2024, the United States Court of Appeals affirmed the dismissal of the claims against the United States but vacated the Judgment as to Magid and the Belizean Defendants. *See* ECF No. 54. It found that with respect to the claims against those Defendants, this Court should have made an explicit finding with respect to jurisdiction before considering the merits. *See id.*

The Court recognizes that it is required to make a jurisdictional determination with respect to the parties before it and therefore revisits relevant arguments raised by the Belizean Defendants and Magid.

## II. Belizean Defendants

The Belizean Defendants — the Government of Belize, the Central Bank of Belize, AIBL, Joy Grant, and Julian Murillo — move to dismiss the claims against them under Federal Rule of Civil Procedure 12(b) for lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. The Defendants ask for dismissal with prejudice and without leave to amend. *See* ECF No. 32.

For this Court to exercise "personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process

requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Because the "limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause," the statutory and constitutional analyses merge. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002) (quoting *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996)). Consistent with due process, a court may subject foreign defendants to judgment only when they have "certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).

AIBL is a bank incorporated under the laws of Belize, with its principal place of business in Belize City, Belize. ECF No. 32-1 at 2. AIBL does not have, and never has had, operations, employees, or branches in Maryland. *Id.* Nor are there any allegations that AIBL advertised or tele-marketed in Maryland. Nevertheless, Aldabe insists the Court has jurisdiction over AIBL, and over the other Belizean Defendants for that matter, because it approved the Settlement between the FTC and AIBL in the Sanctuary Belize litigation.

AIBL did not elect to bring suit in the District of Maryland; the FTC sued AIBL here. The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helilcopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Moreover, personal jurisdiction over AIBL in the FTC Action was not predicated on AIBL's minimum contacts with Maryland, but on AIBL's contacts with the United States as a whole. *See In re Sanctuary Belize Litig.*, 409 F. Supp. 3d 380, 394–95 (D. Md. 2019).

As to the other Belizean Defendants, none was a party to the FTC action, and they do not otherwise have relevant contacts with the jurisdiction. Grant and Murillo are residents and citizens of Belize. They do not reside or conduct business in Maryland, own real property or other assets in Maryland, nor have they ever traveled to Maryland in connection with the allegations of the Complaint. Likewise, there are no facts that show the Government of Belize, or the Central Bank of Belize had sufficient minimum contacts with Maryland to establish jurisdiction.

In sum, the Court concludes that it does not have personal jurisdiction over any of the Belizean Defendants.[3] Accordingly, the Belizean Defendants' Motion to Dismiss is **GRANTED**.

### III. Defendant Magid

To remind: Magid was part of the team of attorneys that represented AIBL in the action with the FTC. Aldabe brings four claims against Magid: (1) "negligent misrepresentation" in connection with statements made in a Stipulated Order signed by the FTC and the liquidator of AIBL (Count 3); (2) negligent personal injury/breach of "a duty of care to defend [AIBL]" (Count 12); (3) negligent misrepresentation involving risk of physical harm by making Aldabe pay for AIBL's alleged acts (Count 16); and (4) intentional infliction of emotional distress by allowing AIBL's liquidator to enter into a settlement agreement with the FTC (Count 18). ECF No. 1. Magid moves to dismiss these claims based on Aldabe's failure to state an actionable claim. He also questions whether Adlabe lacks standing.[4]

A plaintiff bears the burden of establishing that he has standing by proving that (1) he has "suffered an injury in fact . . . that is concrete and particularized, and actual or imminent . . . ; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely,

---

[3] Given that the Court has found that it lacks personal jurisdiction, it need not consider the Belizean Defendants' arguments regarding immunity, venue, or failure to state a claim.

[4] Magid has not made an objection based on personal jurisdiction.

as opposed to merely speculative, that the injury will be redressed by a favorable decision of the court." *South Carolina Wildlife Fed'n v. Limehouse,* 549 F.3d 324, 329 (4th Cir. 2008) (citing *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61, (1992)). "An attenuated causal connection is insufficient; the injuries 'must be fairly traceable to the actions of the Defendants, rather than the result of actions by some independent third party not before the court.'" *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.,* 677 F. Supp. 2d 847, 849 (D. Md. 2010) (quoting *Dixon v. Edwards,* 290 F.3d 699, 711 (4th Cir. 2002)).

The Court finds that Aldabe does not have standing to bring this suit against Magid. Aldabe's Complaint does not (and cannot fairly) allege that he was ever a client of Magid who was, in fact, an attorney for AIBL in the underlying Sanctuary Belize litigation. Aldabe had no account with or relationship with AIBL at all. Instead, assuming what he posits is taken as true, Aldabe at most had a contractual relationship with his wife's firm Palma Efuus Ltd., which in turn was one of AIBL's presumably multiple depositors.

Moreover, Aldabe's claims stem from the fact that the FTC sued AIBL because AIBL had allegedly offered banking services to unsuspecting victims of the Sanctuary Belize scam. Compl. ¶ 36. According to Aldabe, "[t]he FTC then filed a motion to freeze assets against [AIBL] for an amount greater than all of [AIBL's] equities and assets held which produced a bank run, [which] caused the Government of Belize to revoke [AIBL's] banking charter and caused the Central Bank to take over [AIBL] thereafter placing it in liquidation." Compl. ¶ 37.

Aldabe asserts that Magid is one of several attorneys who represented AIBL in the settlement with the FTC but wholly fails to set forth in the Complaint what Magid did or did not do to cause him injury, or how Aldabe has standing. Aldabe asserts that Magid "failed to argue before the court that the FTC was acting outside the scope of its authority (and that the US

Congress explicitly curtailed that authority) by suing" AIBL. Compl. ¶ 39. But, as this Court previously found, the FTC was not acting outside the scope of its authority. *See* ECF No. 35 at 11–13, 20. Perhaps more to the point, Aldabe's alleged injury is several steps removed from anything having to do with Magid's representation of AIBL.

As an alleged third-party beneficiary of funds in a corporation's account at AIBL, Aldabe had no relationship with Magid at all. Aldabe was an incidental beneficiary of the settlement agreement that he alleges led to the run on the bank which caused Palma Efuus Ltd. to recover only a portion of its deposits it allegedly owed him. Aldabe's reliance on the attenuated consequences of the Sanctuary Belize scam is inadequate; Aldabe has failed to allege facts that show that Magid likely caused his injury.

The Court accordingly **GRANTS** Defendant Magid's Motion to Dismiss.

## IV. Conclusion

The Court **GRANTS** the Belizean Defendants' Motion to Dismiss (ECF No. 32); Counts 3, 9, 11, 16, 18, and 19 are **DISMISSED WITH PREJUDICE** as to the Belizean Defendants.

The Court **GRANTS** Defendant Magid's Motion to Dismiss (ECF No. 20); Counts 3, 12, 16, 18, and 19[5] are **DISMISSED WITH PREJUDICE** as to Defendant Magid.

A separate order will **ISSUE**.

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

July 23, 2022

---

[5] Aldabe asserts in Count 19 that he is entitled to punitive damages against all Defendants, including Magid. *See* Compl. ¶¶ 160–61.